**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 22 C 4484 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| BRYAN OSBORNE, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

After Bryan Osborne pleaded guilty to one count of sex trafficking of a minor in violation of 18 U.S.C. § 1591(a), the Court sentenced him to 264 months in prison. Proceeding *pro se*, Osborne now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, asserting that he received ineffective assistance of counsel. Because none of Osborne's contentions have merit, the Court denies Osborne's § 2255 petition and declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## BACKGROUND

On June 22, 2017, a federal grand jury returned a twenty-five count superseding indictment against Osborne, charging him with six counts of coercion or enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Counts 1, 6, 10, 13, 15, and 18); twelve counts of sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a) (Counts 2, 4, 5, 7, 11, 12, 14, 16, 17, 19, 22, and 25); three counts of attempted sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a) and 1594(a) (Counts 3, 8, and 21); two counts of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) (Counts 9 and 20); and two counts of sexual exploitation of children, in violation of 18 U.S.C. § 2251(a) (Counts 23 and 24).

The charges arose from Osborne's use of false identities on Facebook between May 2014 and January 2017 to recruit at least twelve minor girls and one woman to have sex with him by falsely promising that they were auditioning for pornographic videos. Osborne often posed as a female stripper, offering the victims money filming pornographic videos but telling them that they first had to have sex with the "manager" to prove they could handle the scene. He also promised extra money to the minor victims if they recruited even younger girls, between the ages of seven and eleven, to participate in the videos. Osborne would then meet the minor victims at prearranged locations and have oral, anal, and/or vaginal sex with them. On some occasions, Osborne filmed himself having sex with the minor victims. Osborne did not pay the victims as promised, and his female identities on Facebook would provide excuses as to why the victims could not film the scene and would not get paid. Osborne also used his Facebook identities to send victims pornographic images and solicit explicit images from them. He also had images of child pornography on his electronic devices.

On November 19, 2017, Osborne entered a guilty plea to the violation of 18 U.S.C. § 1591(a) charged in Count 22 of the superseding indictment. He also stipulated to multiple other offenses in the written plea agreement, admitting to trafficking eleven minor victims, Minors A, B, C, D, F, G, H, I, J, M, and N, and to attempted trafficking of three minor victims, Minors B, E, and K. The plea agreement contained a typographical error, referring in multiple instances to 18 U.S.C. § 1951(a) instead of 18 U.S.C. § 1591(a). The parties corrected this error at the change of plea hearing, crossing out the incorrect section, writing in the correct section, and having Osborne and his counsel initial each correction. The Court also conducted a plea colloquy. Osborne admitted under oath that he understood the charge to which he was pleading guilty, as well as the facts in support of that charge and the factual basis set out in the plea

agreement. He acknowledged entering his plea voluntarily and that he had not been threatened or promised anything as an inducement to plead guilty. He admitted that he understood the possible penalties and the Court's discretion at sentencing. He also acknowledged the consequences of his guilty plea. The Court confirmed Osborne's understanding that he was pleading guilty to Count 22 of the superseding indictment, and Osborne corrected the Court when it mistakenly referred to § 1951(a) instead of § 1591(a).

Prior to sentencing, a probation officer prepared a presentence investigation report ("PSR"), calculating Osborne's total offense level as 43, his criminal history as I, and his guideline imprisonment range as life. Osborne's counsel objected to the guidelines calculation and argued for a below-guidelines sentence of fifteen years in prison, the mandatory minimum.

The Court held Osborne's sentencing hearing on September 30, 2019. The Court agreed with Osborne's counsel that U.S.S.G. § 2G2.1 provided the appropriate base offense level and that enhancements pursuant to § 3A1.1(b)(1) for targeting vulnerable victims and § 4B1.5(b) for engaging in a pattern of activity involving prohibited conduct were not appropriate. The Court did increase the offense level for each victim over twelve but under sixteen years old pursuant to § 2G2.1(b)(1)(B) and for each encounter that entailed the commission of a sexual act or sexual contact pursuant to § 2G2.1(b)(2)(A). Osborne did not object to these enhancements. With the highest offense level before any reductions for acceptance of responsibility being 38, the Court then applied a five-level enhancement for grouping pursuant to § 3D1.4 and a three-level reduction for acceptance of responsibility pursuant to § 3E1.1. This resulted in a total offense level of 40, which, for Osborne as a Category I offender, translated into an advisory guidelines range of 292 to 365 months' imprisonment. The Court then heard from counsel for the government and Osborne, as well as three victims and Osborne himself. The government

3

requested the imposition of a life sentence to reflect the seriousness of the damage Osborne

inflicted and to protect the public from Osborne's habitual abuse of children. Osborne's counsel

argued for imposition of the mandatory minimum sentence of fifteen years. Osborne took

responsibility for his actions and apologized for his actions. After considering the sentencing

guidelines, the § 3553(a) factors, all the arguments made by the parties, the victim statements,

Osborne's allocution, and the documents submitted to the Court, the Court sentenced Osborne to

264 months' imprisonment, a below-guidelines sentence. The Court also imposed $142,481 in

restitution, a $100 special assessment, and a twelve-year term of supervised release.

Osborne filed a notice of appeal, but his appellate attorney sought to withdraw pursuant

to *Anders v. California*, 386 U.S. 738 (1967). The Seventh Circuit agreed with counsel that

Osborne's appeal was frivolous and granted the motion to withdraw. *United States v. Osborne*,

828 F. App'x 326 (7th Cir. 2020). The Seventh Circuit found that any argument that Osborne

did not plead guilty knowingly and voluntarily would be frivolous, as would any challenges to

his below-guidelines sentence. Osborne, *pro se*, argued that he received ineffective assistance of

counsel and that the Court lacked subject matter jurisdiction because he is a Moorish citizen.

The Seventh Circuit noted that he should raise his ineffective assistance claim in a § 2255 motion

but found his jurisdictional argument frivolous.

## LEGAL STANDARD

"A prisoner in custody under sentence of a court established by Act of Congress claiming

the right to be released upon the ground that the sentence was imposed in violation of the

Constitution or laws of the United States, or that the Court was without jurisdiction to impose

such sentence, or that the sentence was in excess of the maximum authorized by law, or is

otherwise subject to collateral attack, may move the court which imposed the sentence to vacate,

set aside or correct the sentence." 28 U.S.C. § 2255(a). Where the movant "alleges facts that, if

true, would entitle him to relief," the Court should hold an evidentiary hearing to "determine the

issues and make findings of fact and conclusions of law with respect thereto." *Id.* § 2255(b);

*Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010). However, the Court does not need

to hold an evidentiary hearing where the movant "makes allegations that are vague, conclusory,

or palpably incredible, rather than detailed and specific." *Boulb v. United States*, 818 F.3d 334,

339 (7th Cir. 2016) (citation omitted); *see also Lafuente*, 617 F.3d at 946 ("To warrant further

investigation, a petitioner must support a request with more than 'mere unsupported

assertions[.]'"). Ultimately, the Court may deny a § 2255 motion without a hearing if "the

motion and the files and records of the case conclusively show that the prisoner is entitled to no

relief[.]" 28 U.S.C. § 2255(b); *McCleese v. United States*, 75 F.3d 1174, 1182 (7th Cir. 1996).

## ANALYSIS

In Osborne's wide-ranging petition, he asserts twenty-two grounds for relief, which the

government in responding and the Court in ruling interpret as bases for finding that his counsel

provided him with ineffective assistance. *See Massaro v. United States*, 538 U.S. 500, 504

(2003) (although claims generally not raised on direct appeal may not be raised in a § 2255

petition absent a showing of cause and prejudice, ineffective assistance of counsel claims need

not be raised first on direct appeal). Specifically, Osborne claims: (1) his attorneys failed to

move to quash his arrest and to suppress searches (Counts 1–4); (2) his plea agreement was

breached (Count 5); (3) he improperly pleaded to a violation of 18 U.S.C. § 1951 instead of 18

U.S.C. § 1591 (Count 6); (4) witness tampering occurred (Count 7); (5) the Court lacked

jurisdiction over his case (Count 8); (6) the Adam Walsh Child Protection and Safety Act (the

"Walsh Act") is unconstitutional (Count 9); (7) the government improperly used patient records

to prosecute him (Count 10); (8) his signature on the plea agreement was qualified and so rendered his plea invalid (Count 11); (9) the government selectively prosecuted Osborne because of his gender and race (Count 12); (10) agents planted evidence (Count 13); (11) discovery violations occurred (Count 14); (12) the government suborned perjury (Count 15); (13) Osborne's plea was involuntary (Count 16); (14) the government used altered evidence (Count 17); (14) the FBI agent impermissibly opined on the appropriate sentence (Count 18); (15) the Court improperly lengthened his sentence for rehabilitation purposes (Count 19); (16) tacit procuration occurred (Count 20); (17) the Court denied him the right to counsel of his choice (Count 21); and (18) upon remand, he cannot be prosecuted because the statute of limitations has expired (Count 22).

The Sixth Amendment guarantees the accused in all criminal prosecutions "the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is crucial to ensure a fair trial because "access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." *Strickland v. Washington*, 466 U.S. 668, 685 (1984) (citation omitted). The mere presence of an attorney "alongside the accused, however, is not enough to satisfy the constitutional command"—a defendant's "right to counsel is the right to the effective assistance of counsel." *Id.* at 685–86 (citation omitted).

Under the Supreme Court's decision in *Strickland*, Osborne must satisfy two prongs to demonstrate ineffective assistance of counsel; he must show both (1) that his "counsel's performance was deficient" and (2) that this "deficient performance prejudiced [his] defense." *Id.* at 687. For the performance prong, Osborne must establish that his attorney's performance failed to meet an objective standard of reasonableness under prevailing professional norms. *Id.*

6

at 687–88. The Court's "scrutiny of counsel's performance [is] highly deferential," *id.* at 689, and Osborne "must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (citations omitted) (internal quotation marks omitted). In assessing counsel's performance, the Court does "not second guess the reasonable tactical decisions of counsel." *Johnson v. Thurmer*, 624 F.3d 786, 792 (7th Cir. 2010).

As for prejudice, "there is a presumption that [Osborne] has not suffered prejudice," and Osborne "must show that 'but for counsel's errors, there is a reasonable probability that the result would have been different.'" *Perrone*, 889 F.3d at 908 (citation omitted). In the context of Osborne's guilty plea, this means that Osborne must demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (citation omitted). To make this showing, Osborne "must do more than simply allege 'that he would have insisted on going to trial.'" *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (citation omitted). He must "come forward with objective evidence that he would not have pled guilty," such as evidence regarding "the nature of the misinformation provided by the attorney to [him] and the history of plea negotiations." *Id.* With respect to his sentencing, Osborne "must show that but for his counsel's unprofessional error, there is a reasonable probability that the results [of the sentencing hearing] would have been different." *Berkey v. United States*, 318 F.3d 768, 773–74 (7th Cir. 2003).

Osborne cannot satisfy *Strickland*'s prongs for any of the asserted grounds for relief. The Court addresses each ground in more detail below.

A.       **Arrest and Search Warrants (Counts 1–4)**

Osborne first argues that counsel failed to move to quash the arrest and search warrants executed on February 9, 2017.  He claims that the government conducted improper warrantless searches through visual and aerial surveillance of him and that it seized material outside of the scope of the search warrant.   "When the claim of ineffective assistance is based on counsel's failure to present a motion to suppress, we have required that a defendant prove the motion was meritorious." *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005).

Osborne contends that the search and arrest occurred without a warrant because the warrants were not actually signed until after the search and arrest occurred.  But the search and arrest warrants on their face indicate that they were signed on February 7, 2017, two days before their execution. *See United States v. Osborne*, No. 17 CR 73, Docs. 1, 5, 6.  Osborne also argues that the government improperly engaged in warrantless visual or aerial surveillance of him, but the Fourth Amendment does not protect individuals from visual or aerial surveillance of what they expose to the public. *See California v. Greenwood*, 486 U.S. 35, 41 (1988) ("[P]olice cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public."); *Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); *United States v. Porter*, No. 21-cv-00087, 2022 WL 124563, at *3 (N.D. Ill. Jan. 13, 2022) ("Generally, individuals do not possess a reasonable expectation of privacy for information they voluntarily display to the public, especially when traveling in automobiles.").  Osborne also argues that agents exceeded the scope of the search warrant by searching for guns, but he cannot point to anything that counsel could have moved to suppress with respect to this alleged violation.  Even if such a violation occurred, a motion to

suppress evidence beyond the scope of the warrant would not have resulted in suppression of evidence encompassed by the warrant. *See United States v. Buckley*, 4 F.3d 552, 558 (7th Cir. 1993) ("If the defendants in this case wish for suppression of all of the evidence, they must assert that all of the evidence was beyond the scope of the warrant. The seizure of uncontested evidence remains valid and is 'severable from any invalid search.'" (quoting *United States v. Reed*, 726 F.2d 339, 342 (7th Cir. 1984))). As for the seizure of items belonging to his mother, Osborne does not have standing to raise this argument, nor could he show that such seizure required suppression of the evidence validly seized pursuant to the warrant. *See id.*; *United States v. Chiavola*, 744 F.2d 1271, 1273 (7th Cir. 1984) (defendants do not have standing to challenge violations of a third-party's constitutional rights). Thus, counsel did not act unreasonably in failing to press these meritless arguments, nor can Osborne show prejudice. *Peterson v. Douma*, 751 F.3d 524, 533 (7th Cir. 2014) ("The 'Sixth Amendment does not require counsel . . . to press meritless arguments before a court,' and it is always good strategy to avoid wasting time or the court's attention with claims that are going nowhere." (alteration in original) (quoting *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993))).

Osborne also argues that counsel should have moved to quash the arrest warrant based on alleged false statements in the affidavit, as well as conflicting testimony and incorrect evidence presented to the grand jury. Specifically, Osborne argues that Minor D admitted in the grand jury that she did not initially tell the agents that she performed anal sex, as well as oral and vaginal sex, with Osborne; that grand jury evidence incorrectly showed that Osborne used 2,000 IP addresses to communicate with minor victims; that victims in the grand jury gave conflicting statements about whether Osborne used a condom; and that a grand jury witness improperly used the term "cut." But Osborne cannot show that any motion based on these isolated facts,

particularly in light of the voluminous evidence presented to the grand jury, would have succeeded. For example, the fact that Minor D withheld that she had anal sex from agents initially does not undermine a finding of probable cause; instead, the revelation that she also had anal sex with Osborne would have strengthened such a finding. And the grand jury heard the information concerning her initial failure to disclose the full extent of her interactions with Osborne. Faced with the voluminous evidence presented to the grand jury that supported the indictment, counsel cannot be said to have acted unreasonably in choosing not to file a motion to quash or suppress based on the isolated discrepancies on which Osborne seizes, nor can Osborne show prejudice. *See Washington v. Boughton*, 884 F.3d 692, 701 (7th Cir. 2018) ("[A]n attorney is not ineffective for failing to raise a meritless argument.").

### B. Breach of Plea Agreement (Count 5)

Next, Osborne argues that his counsel should have argued that the government breached the plea agreement by including in the government's version of the offense and referencing at sentencing that Osborne asked Minor J to sell small amounts of crack cocaine for him and that she did so on two occasions, despite that statement being crossed out in the plea agreement. Osborne argues that the government's subsequent use of this statement rendered his plea involuntary. Although the plea agreement originally had this information included as part of the factual basis, the parties agreed to strike it from the factual basis. Nonetheless, nothing in the plea agreement or plea colloquy suggests that the parties reached an agreement that the government could not reference this information at sentencing. And although the government referenced the information in its version of the offense and at sentencing, the PSR did not reference it, no enhancements were recommended or applied based on it, and the Court did not reference it in sentencing Osborne. Nothing in the record suggests that counsel acted

unreasonably in choosing not to draw additional attention to this fact or that the government's reference to this fact prejudiced Osborne, particularly given that no agreement existed that the government could not do so at sentencing and Osborne has not shown that the reference influenced his below-guidelines sentence. *See Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001) ("An ineffective assistance claim based on a failure to object is tied to the admissibility of the underlying evidence. If evidence admitted without objection was admissible, then the complained of action fails both prongs of the *Strickland* test: failing to object to admissible evidence cannot be a professionally 'unreasonable' action, nor can it prejudice the defendant against whom the evidence was admitted.").

As for the voluntariness of Osborne's plea, as the Seventh Circuit found, any argument that Osborne did not enter his guilty plea knowingly and voluntarily would be frivolous. *Osborne*, 828 F. App'x at 326–27. Osborne expressly acknowledged that he entered his plea voluntarily and that he did not receive any promises other than those in writing, with everything the government promised to do contained in the plea agreement. Thus, any argument that counsel could have made that the government's reference to Minor J's drug purchases rendered Osborne's plea agreement involuntary would have met no success, and counsel cannot be faulted for deciding not to raise it. *See Washington*, 884 F.3d at 701.

C.      **Reference to § 1951 instead of § 1591 (Count 6)**

Next, Osborne argues that his counsel failed to argue that Osborne pleaded guilty to § 1951, which would result in a twenty-year maximum sentence, instead of § 1591(a). But as Osborne himself acknowledged at the plea colloquy, and as reflected in the plea agreement, Osborne pleaded guilty to § 1591(a), which carried a maximum penalty of life imprisonment. *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) (a defendant's representations at a change

of plea hearing "constitute a formidable barrier in any subsequent collateral proceedings");

*Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) (a defendant's "own statements at

the change of plea hearing . . . are presumed truthful"). Osborne has not identified any basis for

overcoming the presumption of truth that attaches to his statements during the plea colloquy or

his signature on the plea agreement. Therefore, he also cannot fault his counsel for failing to

pursue the frivolous argument that he pleaded guilty to a different statute with a lower mandatory

maximum sentence.

### D.    Witness Tampering (Count 7)

Next, Osborne argues that his counsel failed to argue that the victim witnesses had been

badgered, tampered with, or coerced into participating in the investigation. Osborne seizes on

several statements of victims that they did not want to talk about the events at issue because they

were traumatized by them and that they initially withheld information due to embarrassment. He

argues that the government should not have forced these witnesses to testify and that, by doing

so, they violated the victims' rights. The government construes this as an argument that counsel

failed to investigate these witnesses' testimony.

Counsel does have "a duty to make reasonable investigations or to make a reasonable

decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Here,

however, Osborne has not identified anything that counsel should have investigated with respect

to these victim witnesses, instead arguing that agents violated their rights by pressing them on

their testimony. *See United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("When a

petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the

petitioner has the burden of providing the court with specific information as to what the

investigation would have produced."); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)

("A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."). Nor has he identified what favorable information any investigation would have produced. *See Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017) ("[W]hen the purported deficiency is based on a failure to investigate, we require the petitioner to allege 'what the investigation would have produced.'" (quoting *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004))). Osborne cannot use a victim's privacy rights to attack his conviction, and the Court fails to see how further investigation into the victims' statements that they did not want to talk about what happened or that they were embarrassed by it would have been fruitful to Osborne's defense, particularly where Osborne acknowledges the damaging nature of their testimony. *See United States v. Ramos*, 832 F.2d 85, 87–88 (7th Cir. 1987) (decision not to call a confidential informant "was no doubt a wise tactical decision lest defense counsel now be charged with helping to prove the government's case").

### E. Jurisdiction (Count 8)

Osborne next argues that the government did not prove territorial jurisdiction over the crimes charged. But the superseding indictment charged that the criminal acts occurred in the Northern District of Illinois, and Osborne admitted to such in the plea agreement. He also argues that the Court has not shown itself to be an Article III court, but such an argument is frivolous. *See United States v. Graffia*, 215 F.3d 1331 (Table), 2000 WL 637545, at *3 (7th Cir. 2000) ("Her point about the Article III status of the district court is frivolous and requires no discussion[.]"). The Seventh Circuit also rejected this contention as frivolous, noting that the "superseding indictment charged Osborne with violations of federal criminal law, so the district court had jurisdiction." *Osborne*, 828 F. App'x at 328. Osborne's counsel cannot be faulted for

failing to raise this clearly frivolous argument. *Resnick v. United States*, 7 F.4th 611, 622 (7th Cir. 2021) ("[C]ounsel does not need to raise meritless arguments.").

### F.     Constitutionality of the Walsh Act (Count 9)

Osborne argues that the Walsh Act is unconstitutional and impermissibly prohibits him from possessing a firearm and communicating with the Court and others without allowing him to make a showing that would rebut the necessity of such conditions in his particular case. He contends that had his counsel raised this issue, he would not have pleaded guilty but instead would have opted for trial. To the extent Osborne's claims relate to mandatory bond conditions imposed by the Walsh Act, his counsel had no basis to challenge them because Osborne never was on pretrial release. *See* 18 U.S.C. § 3142(c)(1) (requiring defendants charged with certain crimes involving minor victims to be placed on certain release conditions if released before trial, including "avoid[ing] all contact with an alleged victim of the crime" and "refrain[ing] from possessing a firearm, destructive device, or other dangerous weapon"). To the extent he challenges supervised release conditions that prohibit him from carrying a firearm or using a computer without permission, counsel made the reasonable decision to argue that stringent conditions of supervised release would address recidivism concerns and support a lower sentence of imprisonment, as they themselves are punitive in nature. *See Avitia v. United States*, No. 09 CV 4712, 2010 WL 4705167, at *6 (N.D. Ill. Nov. 10, 2010) (finding baseless ineffective assistance of counsel claim at sentencing where, "[a]s a result of his counsel's advocacy, [the petitioner] obtained a sentence that was a full fifteen months shorter than the minimum sentence recommended by the sentencing guidelines"). Moreover, Osborne cannot show that the Court would not have found such conditions appropriate, notwithstanding the Walsh Act, and so he cannot demonstrate prejudice. *See Berkey*, 318 F.3d at 774 (to show prejudice, a petitioner

14

"must show that but for his counsel's unprofessional error, there is a reasonable probability that the results [of the sentencing hearing] would have been different"). Finally, to the extent that Osborne challenges any conditions that the Bureau of Prisons has imposed on him, that challenge is one he must raise with the Bureau of Prisons.

### G. Use of Patient Records (Count 10)

Osborne argues that the government improperly used his medical records to prosecute him. He complains of the use of information about his medical history, including related to his mental health and substance abuse issues, at sentencing. But Osborne himself chose to provide this information for mitigation purposes at sentencing, and nothing suggests that the government used any such information as part of its investigation or prosecution of the case. Section 3553(a) requires the Court to consider the history and characteristics of the defendant, as well as the need to provide the defendant with treatment and medical care, making his medical history relevant at sentencing. The Court fails to see any impropriety in its consideration of Osborne's medical history or a basis for finding that counsel's decision to present such evidence, and not to move to strike it, is unreasonable. Nor can Osborne establish that the use of his medical records prejudiced him at sentencing, where he received a below-guidelines sentence. *See Rivera-Orta v. United States*, No. 18 C 1659, 2021 WL 4125109, at *5–6 (N.D. Ill. Sept. 8, 2021) (petitioner could not show prejudice for counsel's failure to make arguments at sentencing where the petitioner received a below-guidelines sentence).

### H. Qualified Signature (Count 11)

Osborne next argues that he qualified his signature on the plea agreement, reserving the right to have his conviction reversed. But this, as well as any other jurisdictional arguments or arguments based on sovereign citizen theories, has no merit. *See Osborne*, 828 F. App'x at 328

(finding frivolous Osborne's argument that the Court did not have jurisdiction over him because he identifies as a Moor); *McDauley-Bey v. Meuris*, No. 21-2149, 2022 WL 1055560, at *1 (7th Cir. Apr. 8, 2022) ("[A]rguments that a defendant is sovereign and beyond the jurisdiction of the courts 'should be rejected summarily, however they are presented.'" (quoting *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011))). Thus, Osborne's "qualified" signature does not provide a basis for reversing his conviction, nor does counsel's failure to argue this point provide a basis for finding that counsel rendered ineffective assistance.

## I.    Selective Prosecution (Count 12)

Osborne argues that counsel should have raised an argument of selective prosecution. A selective prosecution claim requires "clear evidence" that the prosecutor pursued "similar cases differently based on" a protected characteristic. *Conley v. United States*, 5 F.4th 781, 789–90 (7th Cir. 2021). It requires proof that the prosecutorial policy had a discriminatory effect and was motivated by a discriminatory purpose. *United States v. Armstrong*, 517 U.S. 456, 465 (1996). Osborne claims that discovery revealed that three of the minor victims engaged in prostitution or pimping but that the government did not prosecute them. But nothing suggests that the government based its decision not to prosecute these minor female victims on their gender and not on other distinguishing factors or that these victims engaged in comparable conduct. And while Osborne generally argues that his race influenced the government's decision to prosecute him, he provides no concrete support for this proposition. Thus, because Osborne has not provided support that his race or gender factored in his prosecution, it does not appear that a selective prosecution defense would have been successful, and so counsel cannot be faulted for failing to raise the argument. *See Cieslowski*, 410 F.3d at 360 (where claim of ineffective assistance is based on the failure to file a pre-trial motion, the petitioner must prove

16

that the motion had merit); *Campbell v. United States*, No. 16-CV-632, 2018 WL 8800054, at *4 (N.D. Ill. Oct. 9, 2018) ("His trial lawyer's choice to forgo a long-shot selective prosecution claim was neither deficient performance nor prejudicial to petitioner's defense.").

### J.     Planted Evidence (Count 13)

Osborne contends that the government used planted evidence against him, specifically, a green and pink mask.  Osborne admits to using a pink mask but argues that he never used a green and pink mask.  He faults counsel for not investigating further into the photographs of the pink and green mask or challenging the mask's use in his prosecution.  Initially, Osborne cannot point to anything in the record indicating that the government used the pink and green mask against him at any point in the proceedings.  Further, counsel could have reasonably made the strategic decision not to pursue any arguments based on the green and pink mask, given Osborne's admission to using masks during the commission of his sex offenses and the other overwhelming evidence against him.  Thus, without more suggesting that this one mask carried great weight in Osborne's prosecution, Osborne has not shown that his counsel acted unreasonably in failing to pursue this line of inquiry or that the outcome of his case would have differed absent the existence of this allegedly planted evidence.

### K.     Discovery Violations (Count 14)

Osborne argues that the government violated its obligations under *Brady v Maryland*, 373 U.S. 83, 87 (1963).  *Brady* requires the government to "disclose evidence materially favorable to the accused."  *Youngblood v. W. Virginia*, 547 U.S. 867, 869 (2006).  A *Brady* violation occurs where (1) the evidence is favorable to the accused as exculpatory or impeaching; (2) the government suppressed the evidence; and (3) the evidence was material.  *Strickler v. Greene*, 527 U.S. 263, 280–82 (1999).  "Suppressed evidence is not material unless there is a 'reasonable

probability that the suppressed evidence would have produced a different verdict.'" *United States v. Villasenor*, 664 F.3d 673, 683 (7th Cir. 2011) (quoting *Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007)). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10 (1976). Instead, materiality may be established through a "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Villasenor*, 664 F.3d at 683 (quoting *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 644 (7th Cir. 2008)).

First, Osborne complains that, in his criminal case, the government stated that he tried to traffic an unnamed nine year old. Osborne claims that because the government never disclosed the first name of the victim, he had no ability to confront the witness. He contends that the mention of this conduct caused him prejudice in a separate case he brought under 28 U.S.C. § 2241 case. But Osborne cannot use alleged prejudice in a separate case to show that the government's reference to a nine-year-old victim, without identifying information, prejudiced him in this case. Moreover, the Court fails to see how the name of the nine-year-old victim would have changed the outcome of Osborne's case, where no charged conduct involved this victim, he did not receive any sentencing enhancement for conduct with a minor under the age of twelve, and the Court did not indicate that this conduct in any way affected the below-guidelines sentence it imposed.

Osborne next argues that the government withheld certain text messages with Minor J that would have shown him buying her son clothes and that she asked him to engage in certain sexual acts in exchange for money. *Brady* would not seem to apply to these text messages, of

18

which Osborne was aware. *See Agurs*, 427 U.S. at 103 (*Brady* applies to information "known to the prosecution but unknown to the defense"). And even assuming that the government did not produce these text messages to Osborne, he has failed to explain how this information was material, given that he admitted to having oral, anal, and vaginal sex with Minor J on at least six occasions.

Finally, Osborne argues that counsel should have pursued other discovery materials, but his vague reference to these materials makes it impossible for the Court to address their materiality. To the extent he provides more specificity, his citations to grand jury materials demonstrates that he did in fact have access to the allegedly withheld material. Moreover, nothing suggests that the allegedly withheld material would have affected the outcome of his case, given the extensive evidence against him and the conduct to which he admitted. Therefore, Osborne cannot show that his counsel provided him with ineffective assistance in failing to pursue a *Brady* claim.

### L.     Subornation of Perjury (Count 15)

Next, Osborne contends that counsel should have raised the fact that certain witnesses committed perjury, pointing to instances where the minor victims acknowledged that they had not admitted the full scope of their interactions with Osborne on prior occasions and to the case agent's affidavit in support of the criminal complaint that included only these victims' initial statements and not the fuller statements that they later made to the grand jury.

Perjury involves "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Montano v. City of Chicago*, 535 F.3d 558, 564 (7th Cir. 2008) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). Here, the alleged inconsistencies do not satisfy this

definition, as the victims provided credible explanations for why they initially minimized what occurred and later gave fuller testimony. While these inconsistencies could bear on the victims' credibility, they did not rise to the level required to find perjury. Further, the grand jury was apprised of the inconsistencies in the victims' statements, and "[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *Shasteen v. Saver*, 252 F.3d 929, 933 (7th Cir. 2001). Because any argument that the victims committed perjury would not have had merit and the affidavit did not include false statements, counsel cannot be faulted for failing to raise this issue with the Court.

### M. Voluntariness of Plea (Count 16)

Osborne argues that counsel failed to inform him that he might receive a consecutive sentence, making his plea involuntary. But because Osborne pleaded guilty only to a single count of the indictment and he was a first-time offender, meaning he was not subject to any undischarged term of imprisonment, the Court could not have imposed a consecutive sentence. Therefore, counsel did not act unreasonably in failing to discuss this non-existent possibility, nor can Osborne show any prejudice from such failure.

### N. Altered Evidence (Count 17)

Osborne next complains about the way in which the government presented certain messages to the grand jury, with the messages appearing in chronological order from the bottom to the top of a page instead of from the top to the bottom. He argues that this made the messages misleading. But any challenge to the presentation of the text messages would have been frivolous, as a reader would understand from context that the messages were presented in reverse order, and Osborne does not argue that the content of the texts was incorrect.

Next, Osborne contends that the government did not quote texts verbatim at sentencing, omitting certain context. But nothing required the government to quote verbatim at sentencing when summarizing the evidence as it related to each victim, and Osborne has not suggested why counsel's failure to request a verbatim reading was unreasonable or prejudiced him. Finally, Osborne argues that certain photographs appeared darker when printed than they would have on his phone, while others were not taken at his residence. But he again cannot show how a challenge to this would have had any merit, or why the alleged darkening or location where the photographs were taken had any effect on the evidence presented. Thus, he has failed to show that his counsel acted unreasonably or that the alleged use of this altered evidence prejudiced him.

### O.  FBI Agent's Sentencing Opinion (Count 18)

Next, Osborne complains about the PSR's inclusion of the case agent's opinion that if Osborne was released early, he would engage in similar criminal conduct again. He argues that the case agent should not have suggested a sentence, and that his counsel should have moved to strike the opinion from the PSR. While counsel did not move to strike this opinion, he did strenuously argue for a below-guidelines sentence, contending that, with appropriate treatment, such a sentence could address the risk of recidivism. And despite the case agent's opinion about Osborne's risk of recidivism, the Court sentenced Osborne to a below-guidelines sentence, demonstrating that the case agent's opinion did not influence the sentence Osborne received. Thus, Osborne cannot show that the failure to move to strike this sentence prejudiced him.

### P.  Rehabilitation (Count 19)

Osborne also argues that the Court improperly lengthened his sentence to promote rehabilitation in violation of *Tapia v. United States*, 564 U.S. 319 (2011), contending that the

Court's comments at sentencing made clear that rehabilitation was the driving force behind the sentence imposed. *See Tapia*, 564 U.S. at 332 (the Sentencing Reform Act "precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation"); *United States v. Long*, --- F.4th ----, 2023 WL 5362668, at *5 (7th Cir. Aug. 22, 2023) ("[T]o show a *Tapia* error, a defendant must show that the district court focused exclusively or disproportionately on rehabilitation in deciding whether to impose a prison term or how long a term should be."). Osborne argues that his appellate counsel proved ineffective for failing to raise the alleged *Tapia* error on direct appeal.

To prevail on a claim of ineffective assistance of appellate counsel, Osborne "must show not only that the claims omitted from his direct appeal would have been meritorious, but that they were 'significant and obvious' and 'clearly stronger' than the issues counsel *did* raise." *Clark v. United States*, 680 F. App'x 470, 473 (7th Cir. 2017) (quoting *Blake v. United States*, 723 F.3d 870, 888 (7th Cir. 2013)). He also would have to show prejudice, "that it's reasonably probable that including the omitted issues would have changed the outcome of his direct appeal." *Id.* at 474. But here Osborne cannot make either showing. Appellate counsel briefed whether Osborne could raise a non-frivolous challenge to the substantive reasonableness of his sentence. *Osborne*, 828 F. App'x at 327. And the Seventh Circuit agreed with appellate counsel that Osborne could not make any non-frivolous challenges to his below-guidelines sentence. *Id.* The Seventh Circuit noted that the Court "fully considered the factors under 18 U.S.C. § 3553(a) in selecting his sentence," and "weighed the nature of Osborne's offense, the impact on his victims, his own history of abuse, and his high potential for rehabilitation," with the court finding a below-guidelines sentence appropriate "because of the prospect of rehabilitation." *Id.* In other words, the Court did not lengthen the term of imprisonment based on rehabilitation but instead

found it appropriate to give Osborne a below-guidelines sentence because, among other mitigating factors, the prospect existed for rehabilitation. Thus, because any argument about the Court's sentencing determination would have been frivolous, as recognized by the Seventh Circuit, Osborne cannot establish that his appellate counsel provided him with ineffective assistance on this basis.

### Q. Tacit Procuration (Count 20)

Osborne argues that the Court tacitly consented to his release and the dismissal of his criminal case by failing to respond to a contract he mailed to the Court on December 7, 2021. Osborne appears to base this alleged "contract" on sovereign citizen theories that the Seventh Circuit has repeatedly rejected. *See Benabe*, 654 F.3d at 767 (instructing courts to "reject[ ] [sovereign citizen arguments] summarily, however they are presented"). The Court fails to see how this claim raises a cognizable basis for relief under § 2255. *See* 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."); *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) ("Relief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" (quoting *Blake*, 723 F.3d at 878–79)).

### R.     Right to Counsel of Choice (Count 21)

Osborne next argues that he was denied the right to counsel of his choice when one of the attorneys appointed to represent him moved to withdraw.  He contends that if that attorney had represented him, he would not have pleaded guilty.  But Osborne had already pleaded guilty at the time the attorney was appointed and then sought to withdraw, making that argument frivolous.  Moreover, because Osborne did not have the means to hire an attorney, he did not have the right to counsel of his choice.  *See United States v. Wallace*, 753 F.3d 671, 675 (7th Cir. 2014) ("[T]he right to counsel *of choice* does not extend to defendants who require counsel to be appointed for them." (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006))). Osborne thus cannot complain that the Court relieved an attorney from representing Osborne based on the attorney's expressed conflict of interest, particularly where his appointed counsel at sentencing proved an effective advocate and successfully argued for a below-guidelines sentence.  *See Wheat v. United States*, 486 U.S. 153, 159 (1988) ("[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."); *United States v. Harris*, 394 F.3d 543, 552 (7th Cir. 2005) ("[I]f a defendant is still afforded adequate representation, an erroneous denial of a motion for substitution is not prejudicial and is therefore harmless." (citing *United States v. Zillges*, 978 F.2d 369, 372–73 (7th Cir. 1992))).

### S.     Statute of Limitations (Claim 22)

Finally, Osborne argues that the statute of limitations would bar any further proceedings if the Court vacated his conviction and remanded it for retrial.  As with the tacit procuration argument, the Court fails to see how this provides a basis for relief under § 2255.  And because

the Court does not find a basis for vacating Osborne's conviction or sentence, this argument is moot.[1]

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A petitioner is entitled to a certificate of appealability only if he can make "a substantial showing of the denial of a constitutional right." *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (quoting 28 U.S.C. § 2253(c)(2)). To make this showing, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Whether to issue a certificate of appealability is a threshold issue, and its determination neither requires nor permits full consideration of the factual and legal merits of the claims. *Miller-El*, 537 U.S. at 336. "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 342.

For the reasons stated above, the Court finds that there can be no showing of a substantial constitutional question for appeal, as reasonable jurists would not find the Court's ruling debatable. *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). Accordingly, the Court declines to issue a certificate of appealability.

---

[1] The Court nonetheless notes that a statute of limitations does not exist for violations of § 1591. *See* 18 U.S.C. § 3299 ("Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation for any offense under . . . section 1591.").

## CONCLUSION

For the foregoing reasons, the Court denies Osborne's petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [1], thereby terminating his case. The Court further declines to certify any issues for appeal under 28 U.S.C. § 2253(c).


Dated: September 18, 2023

SARA L. ELLIS
United States District Judge